**In the Matter of Bruce Carlton WOLLAN.**

**No. CX–86–732.**

Court of Appeals of Minnesota.

July 22, 1986.

Stephen D. Radtke, Bloomington, for appellant Bruce C. Wollan.

Hubert H. Humphrey, III, Atty. Gen., Gary A. Van Cleve and Julie Harris, Spec. Asst. Atty. Gens., St. Paul, for appellant Minnesota Dept. of Human Services.

Thomas Bennett Wilson, III and Gayle Gaumer, Wilson Law Firm, Edina, for respondent Barbara C. Nash.

Thomas Johnson, Hennepin Co. Atty., James R. Albrecht, Asst. Co. Atty., Minneapolis, for respondent Hennepin County.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

Appellants Bruce Wollan and the Minnesota Department of Human Services seek review of a March 25 judgment, entered pursuant to a March 19 order of the trial court. The court interpreted the rights of Barbara Nash to participate in the special review board hearing process concerning the placement of her brother, Bruce Wollan, on pass-eligible status.

The trial court found Nash is an "interested person" as defined by statute, and Wollan urges reversal of that finding. Even if Nash is an "interested person," Wollan argues her only right is to notice of, and attendance at, the special review board hearing, without any right to participate. The Department does not contest the trial court's finding that Nash is an interested person, but argues that Nash should not be permitted access to Wollan's medical records to prepare for the special review board hearing. Even if access is permissible, the Department challenges the trial court's failure to impose conditions restricting Nash's disclosure of private data contained in the medical records.

We affirm the trial court's (a) finding that Nash is an interested person entitled to notice of the medical director's proposal to make her brother eligible for passes, (b) holding that an interested person entitled to notice may also participate in the special review board hearing, and (c) order directing disclosure of private data on the patient to Nash.

## FACTS

The record reflects a record of commitment for treatment of Wollan's mental illness dating back to at least 1969. He was provisionally discharged in 1970, but that discharge was revoked and Wollan returned to Anoka State Hospital. After discharge from the state hospital, Wollan attacked his sister with a meat cleaver in 1971. As a result, Wollan was convicted of aggravated assault and sentenced to prison. He was medically paroled to the Minnesota Security Hospital in 1972 and then paroled to the community in 1973. Parole was revoked and while released again on parole, Wollan bit off the ear of one person and assaulted others in an incident in late 1977.

In 1978 Wollan beat his mother with a fireplace poker and stabbed her with a knife. As a result of massive bleeding caused by these wounds, Wollan's mother died. Wollan was then committed as a mentally ill and dangerous person in September 1979. In December of 1979, Wollan was certified competent to stand trial on first degree murder. In September 1981 he was found not guilty by reason of insanity when the offense was committed. Wollan was committed as a mentally ill and dangerous person following the verdict.

Hennepin County objected to the issuance of passes permitting Wollan to leave the state hospital, arguing that even a temporary release created a significant risk of harm to the public. By order, the trial court prohibited the issuance of passes to any patient committed as a mentally ill and dangerous person without the consent of the special review board. On appeal, the state supreme court held that passes are a form of treatment and sole responsibility for them (under the 1982 Commitment Act) was vested in the medical director. The supreme court reversed the requirement

that the special review board approve passes. *See County of Hennepin v. Levine,* 345 N.W.2d 217, 218 (Minn.1984).

The 1984 Legislature amended the Commitment Act to explicitly require notice to the committing court, the county attorney, interested persons, the petitioner who brought commitment proceedings, and their counsel, that a patient will be eligible for passes. 1984 Minn. Laws ch. 623, §§ 6, 7 (codified at Minn.Stat. § 253B.18, subds. 4a, 4b (1984)). Those notified now have the right to request review by the special review board of the proposal to make a patient eligible for passes.

In October 1985 Barbara Nash brought a petition for declaratory judgment regarding her rights to oppose placement of her brother on pass-eligible status. The security hospital subsequently withdrew its proposal to change Wollan's status. By order in March 1986 the trial court concluded that Nash is an interested person entitled to notice of future proposals. The court declared that Nash has the right to examine Wollan's medical records and all other records, reports, and exhibits relevant or presented to the special review board, that she may testify and submit evidence, and that she may examine witnesses. The Department of Human Services and the patient jointly seek review.

## ISSUES

1. Did the trial court err by finding Nash is an "interested person" as defined by Minn.Stat. § 253B.02, subd. 10 (1984)?

2. Did the trial court err in holding an interested person has the right to participate in a special review board hearing on placing a patient on pass-eligible status?

3. Did the trial court abuse its discretion by allowing Nash access to Wollan's medical records?

## ANALYSIS

1. The state hospital system employs a system of "passes" that permits patients to begin with a short, escorted, walk on hospital grounds and eventually earn permission to leave the hospital, alone, for up to ten days. *Levine,* 345 N.W.2d at 218 n. 1.

"The pass system is a rehabilitative form of treatment; it is an essential aspect of treatment of [mentally ill and dangerous] patients in the least restrictive fashion." *Id.* at 223.

There are currently two stages in the pass process. A mentally ill and dangerous patient may not be *released* on a pass until a pass plan "has been approved by the medical director of the Minnesota state security hospital." Minn.Stat. § 253B.18, subd. 4a (1984). Before actual release, the director must notify the appropriate county welfare agency, the committing court, the county attorney in the committing county, interested persons, and the petitioner who brought commitment proceedings (and that person's counsel) "of the plan, the nature of the passes proposed, and their right to object to the plan." *Id.* If anyone timely objects, they may "appear, personally or in writing, before the medical director, within ten days of the objection, to present grounds for opposing the plan." *Id.*

Before a specific pass plan is considered by the medical director, a patient must be placed on "pass-eligible *status*." For mentally ill and dangerous persons found not guilty of a felony because of mental illness immediately before commitment, that status must be approved by the medical director. *Id.* subd. 4b. The statute further provides:

At least ten days prior to a determination on the status, the medical director shall notify the committing court, the county attorney of the county of commitment, an interested person, the petitioner, and the petitioner's counsel of the proposed status, and their *right* to request review by the special review board. If within ten days of receiving notice any notified person requests review by filing a notice of objection with the commissioner and the head of the treatment facility, a *hearing shall be held* before the special review board. The proposed status shall not be implemented unless it receives a favorable recommendation by

a majority of the board and approval by the commissioner.

*Id.* (emphasis added).

Since notice must be given to "an interested person" of the "right to request review by the special review board," the first issue is whether Barbara Nash is an interested person. An "interested person" is defined under the statute as:

an adult, including but not limited to, a public official, and the legal guardian, spouse, parent, legal counsel, adult child, next of kin, or other person designated by a proposed patient.

*Id.* § 253B.02, subd. 10. Wollan reads this definition to require that only those persons designated by the patient are "interested persons." We reject this interpretation.

An interested person may initiate commitment proceedings. *See id.* § 253B.07, subd. 1. If we adopted Wollan's interpretation of the definition, only those persons chosen by the proposed patient could bring a petition for his involuntary commitment. Statutes should not be interpreted so as to produce an absurd, impossible, or unreasonable result. *See id.* § 645.17(1).

■ While the syntax of the definition is not ideal, poor grammar and syntax do not vitiate a statutory provision. *Id.* § 645.18. We construe the definition to include adults who are *either* public officials, relatives or counsel of the proposed patient, or otherwise designated by the proposed patient. By its terms, the statutory definition is not limited to those examples. However, it is undisputed that Barbara Nash is, since the death of her mother, Wollan's next of kin. She is, therefore, an interested person entitled to notice of the director's intention to consider a change of Wollan's pass-eligibility status.

2. Although the statute gives interested persons the "right to request review by the special review board" and directs the board to hold "a hearing," it does not explicitly define the procedures to be followed at the

hearing or the roles of the participants. *See* Minn.Stat. § 253B.18, subd. 4b.

Wollan argues an interested person who has the right to request a hearing has no right to speak at, or participate in, that hearing. However, the statute does not *explicitly* authorize the patient or anyone else to participate in the hearing either.[1] It is difficult to believe the legislature intended a hearing to be held without any participants, save the board itself. We know the patient has the right to be represented by counsel at this hearing because it is a proceeding under the Commitment Act. *Id.* § 253B.03, subd. 9; *In re Hefler*, 378 N.W.2d 808, 810 (Minn.Ct.App.1985).

In determining the role of an interested person before the special review board, we look for guidance to the prior subdivision of Minn.Stat. § 253B.18. If a person objects to a pass plan being considered by the medical director,

the person shall have an opportunity to appear, personally or in writing, before the medical director within ten days of the objection, to present grounds for opposing the plan. The pass plan shall not be implemented until the objecting person has been furnished that opportunity.

Minn.Stat. § 253B.18, subd. 4a (1984). Similarily, since the purpose of the special review board hearing is to review a proposed change of status in light of the notice of objection, we will construe the status to give meaning and effect to the entire subdivision. *See id.* § 645.16.

■ At a minimum, the patient and his counsel, and the person objecting to the change of status, must be permitted to participate in the hearing because the board's function is to balance "the state's role in protecting its citizens and the state's role in rehabilitating mentally ill individuals in its custody." *Levine*, 345 N.W.2d at 219.

3. Finally, the Department of Human Services argues that the trial court's order permitting Nash access to Wollan's medical

---

**1.** In fact, the statute specifies that the patient has no affirmative right to seek pass-eligible

status from the special review board. Minn. Stat. § 253B.18, subd. 4b.

records is unauthorized. Information concerning patients receiving mental health treatment is private data and may not generally be disclosed. Disclosure is permitted pursuant to statute, with the consent of the patient and "pursuant to court order." Minn.Stat. § 13.46, subd. 7(b) (1984).

 We agree with the Department that interested persons *as a class* have no general right of access to patients' medical records. The statute specifically vested the trial court in this case with responsibility for determining whether Nash had a legitimate need for access. We cannot agree with the Department that allowing Nash, the patient's closest remaining relative and the subject of attempted and threatened violence by the patient, access to medical records of Wollan's six-plus years of commitment, for the sole purpose of presenting her objections to placement of Wollan of pass-eligible status was an abuse of that discretion.

This court is "concerned that private data gathered from medical records not be disclosed to the public." *In re Morton*, 386 N.W.2d 832, 834 (Minn.Ct.App.1986). We hold only that the trial court's order permitting access to the patient's medical records *in this case* was not an abuse of discretion.

Wollan attacked his sister after he had been discharged from the state hospital. While on parole to the community for the second time he killed his mother. Nash's interest in probing the "treatment decision" of state authorities was recognized by the legislature when it adopted provisions for interested persons to obtain review of the medical director's proposal to change the status of mentally ill and dangerous patients.

### DECISION

The patient's sister is an interested person entitled to notice of proposed placement of the patient on pass-eligible status. The right to review at a hearing of the special review board includes the right to participate in that hearing. The trial court, which has the discretion to order disclosure of private data maintained on a mental health patient, did not abuse its discretion in this case.

Affirmed.